I'd like to reserve time and I will mind the clock. Okay, thank you. I think in looking at this appeal, I think it's important to be mindful of the fact that we are dealing with a complaint and not a summary judgment case where there's a record that's been developed and where disputed issues of fact have been presented to the Court. In this case, the facts, because we're dealing with a complaint, must be treated as true, as the Court knows. And the evidence shows, the record shows, that the Court reached factual determinations and conclusions that we think exceed the proper inquiry for the Court. Counsel, you obviously have a lot of things in your complaint. To what portion of your complaint are you referring when you were talking about that the Court basically made findings of material fact as opposed to doing what should be done under 12b-6? What aspect of your complaint are you referring to? I think that the clearest example is in the 1983 context. Okay. In which the Court makes a determination that Mr. Turner's speech could be classified as being personally motivated as opposed to being one that would qualify for protection. This is the Garcetti kind of issue, right? Exactly. And, you know, each of the cases that the appellees rely upon, that this would be the Canik case and the Derosier case, these are cases where the Court had a record upon which to make that kind of determination. But don't you have to allege that he was giving speeches that implicated public interest, and what you allege seems much more like an internal grievance, and what is alleged in the complaint is more of an internal discussion? So why should we assume he was doing more than is in the complaint? Well, I — well, I — we wouldn't — we couldn't ask the Court to assume more than But without more, doesn't he not satisfy the standard for it being First Amendment protected? Well, I would contend that we absolutely do state facts that show a matter of public concern. So which facts? How do you think that you meet that standard with the facts that are in the complaint? With the facts. Specifically in the complaint, if you — in responding to Judge Friedland's question, where in the complaint on this 1983 matter do you refer us to show that it was clear that he was talking about a matter of public concern as opposed to it a personal grievance about the way he'd been treated and his particular personal problems? Within the complaint, first of all, he refers to the use — the illegal use of temporary employees. Now, although he was — But in the context of his own grievance, was it not? Certainly. Certainly. But the issue — I think the analysis as to that part of his — of what he disclosed, the analysis, although it happened to have a personal impact on him and he was in a position to know of it, he was referring to something — he was not referring to a decision about himself only. He was referring to a practice. I appreciate your concept here, counsel. I guess what I'm struggling with is it's — the cases seem to say that if you've got a policeman or a fireman or a public employee like your client that has a public grievance, it's got to be something like, you know, I just want the taxpayers to know that — without referring to their own situation, you've got all these things, you've got all these people being hired. There are this many here, this many there, this many — it saves the city this amount of money and it's violating law. Now, that's one thing. But on the other hand, where it says, you know, I personally have been hired, treated badly by this policy, I don't see how you get around the issue that Supreme Court has set up on this. Well, I would also point out that even separately from that part of his — what his disclosure — his disclosure about the illegal usage of the falsified records, I think unquestionably puts this in the context of a matter of public concern. That's not — the falsified records are not a personal grievance. Those are falsified records. What we alleged in the complaint is that the city was engaged in — the department was engaged in falsifying records and asking employees throughout the department to change their time cards when they were being submitted to the controller. Isn't that the one that requires the taxpayer allegations to show alleged payment of personal taxes to the city and county? Well, that's one point. The alleged — the requirement of personal taxes is a case that was — the primary case is the Weatherford case. And that was a decision by Judge Dondero. This Court wasn't so concerned with that because it was dealing — it focused more on standing. But that decision was just taken up by the Supreme Court. The case is 226 Calap 4th — 460. That issue, precise issue, was just taken up by the California Supreme Court. Well, what about Doe v. Madison School District, which is one of our cases that deals with the same issue? Well, in the Doe case, I believe that the — that — are you referring to — That's the specific amounts requirement, that you have to allege specific amounts of funding that's being paid, taxpayer money that's being paid out? Well, that's another summary judgment pleading issue. Actually, could I ask you a different question about this? So I think you're — this entire issue we're talking about, that entire claim, depends on taxpayer standing. Can you cite any recent case in Federal court that recognizes taxpayer standing for anything like this kind of claim? I thought taxpayer standing only existed in a tiny little bit of the Establishment Clause, and anywhere else there really isn't taxpayer standing in Federal court. Well, I — I would, with respect to taxpayer standing, there's — I don't think that there's an issue from our perspective, other than the cases that we've cited. Right. But you cite Arizona Christian, which says that the mere fact that a plaintiff is a taxpayer is not generally deemed sufficient to establish standing in Federal court. And yet you're citing that and then saying you have standing in Federal court. And I don't understand how you have taxpayer standing in Federal court, period. I think that claim is just gone because you don't have standing here. Well, with respect, I believe that we do have standing because we have a direct injury in this case. And what is that injury? Mr. — the — our contention is that there was a plan in advance to hire Mr. Turner and several other individuals as, quote, temporary employees. And so his injury is that he had the wrong employment status, right? The injury you're now saying is the injury there. It's not his penny that he pays in his taxes that goes to this, but it's his fact that he was hired improperly. Is that what you're saying? That's what we're saying. And if the court is contending that they're — And so — but isn't the — the claim that you're making there is under a State law that the only relief you can get is injunctive relief to stop the misuse of taxpayer funds. So if we were to say you were right and say, okay, the State has to stop — or the City has to stop doing this, stop misusing these taxpayer funds, it would be injunctive relief going forward. How would that redress the injury of whether he got the right job years ago? Well, it would — it would — well, we would ask the — ask the court to give injunctive relief to rehire him. But that wouldn't be a — that wouldn't be a redressing the misuse of taxpayer funds generally. We'd have to just order the City to stop using the funds this way, and that wouldn't mean they had to hire him. Well — They could hire someone else on a permanent basis instead of a temporary basis. Well, I think that's — that's true. I think that the — in this case, I would argue that the intertwinement of the expenditure and the injury to Mr. Turner is sufficiently close and intermixed that he has — he has alleged a direct injury. And I think on that — If he has, though, it's not a taxpayer-standing point, right? And then you're — I don't really understand how this State law that you're invoking has anything to do with what you're claiming on that point. Well, I would argue that — well, I did submit it on that point, because if that's the court's determination, that's just an interpretation that we would submit it on that. Do you want to save any of your time? It's up to you entirely, but — It looks like I have five minutes. You have about five and a half, but it's up to you. Yes, I would. Okay. And then we'll hear from the City and the County, and then you come back up and tell us why you think they're wrong. Good morning, Your Honors. My name is Jonathan Rolnick. I'm a deputy City attorney, and I'm here on behalf of the City and County of San Francisco. This comes — this case comes to this Court on a order granting the City's motion 12b6 to dismiss. I'm going to give you a little bit of context on the pleadings. But this was not a decision that the district court reached quickly. This was a decision that the district court reached after six different iterations of the complaint over 20 months, during which time the appellant plaintiff, Turner, actually conducted some discovery and had the benefit of a previous ruling from the Court about the very deficiencies that were — led to the ultimate granting of the motion that's now on appeal here. So, yes, this is a pleadings case, but this is not one which was reached quickly in the lawsuit. It sounds — from my reading of the record, it sounds like the Court kind of bent over backwards to try to help the plaintiff plead properly, but was unable to do so. I think that's a fair statement. There were numerous claims in the case, some of which have not been appealed here. And in the Court's ruling on the Fourth Amendment complaint, which was the fifth iteration of the complaint, the district judge went to great lengths to explain what he believed were the deficiencies of the complaint and suggest ways in which the complaint could be, you know, amended to address those deficiencies. And we wound up essentially on the Fifth Amendment complaint with pretty much the same iteration of the complaint as we've seen in the previous versions. I would like to focus on my argument on two issues, and those are the two Federal claims here. One we just talked about, which was the Section 1983 retaliation for engaging in protective speech, and the other one, which is where I'd start, is with the deprivation of a due property interest in this case. The district court, with respect to that due process, excuse me, property interest claim, I think it said Liberty, noted that Mr. Turner failed to demonstrate that he had a recognizable property interest in this claim. He conceded in the case that he had a recognizable property interest in the Fifth Amendment complaint that he was hired as a temporary exempt employee in two places. Early on, he concedes that. And at the very end of the complaint, he notes, on the last day of the employment, they handed him a piece of paper that he had signed at the outset of his employment acknowledging his temporary exempt status. When you say he concedes that, is that your response to his bait-and-switch argument? It seems to me that he now, anyway, is making an argument that he was essentially told he was being hired for a permanent position, and then when he got there the first day, that it was a temporary position. I didn't really see the district court address that bait-and-switch point, but maybe you're saying it's because he conceded something below? Well, I think, one, he concedes it, and, two, I think there are a couple points on this. I think the case law is clear, is that you have the type of employment that you have. These issues about a bait-and-switch are about, I went through all these processes, this kind of quasi-contractual or detrimental reliance. Well, there is no claim here for that. And, of course, there is no such basis for public employment that's of a contractual basis. In California, it's very clear for decades that public employment is a matter of statute, not a matter of contract. So that's one point.  The other case, this idea that I was a de facto permanent civil service employee, the facts of this case are remarkably similar to Kreitzer. In Kreitzer, we had a doctor who was hired pursuant to a charter provision as a physician that was exempt. The exempt physician position was one who was actually a doctor who was out there actually providing services, health care services, to patients. Dr. Kreitzer came in and said, well, actually, I was working as a supervisor. I wasn't doing so much of the patient care. And there's a different provision of the charter that says if I'm doing that, if I'm supervising, that it's a permanent civil service employee. And the Court said, that's just an allegation that you're working out of class. That doesn't turn your temporary exempt position into a permanent civil service one. We have the exact same scenario here. We have Mr. Turner, who's hired. He says, here's the charter provision, not more than three years, special projects or professional services, and that's not what I was doing. It's the exact same thing. It's a claim that I was working out of class. And that's the same argument that Kreitzer shot down. Mr. Turner argues, well, we shouldn't look to Kreitzer because it's only a decision of the district court of appeals, not the California court of appeals, of the California Supreme Court. He says, instead, we should look at McGillicuddy. Well, McGillicuddy is from the exact same court. And the difference between Kreitzer and McGillicuddy, which is very important, is that Kreitzer is an interpretation of the charter that's actually at issue in this case, and it has the benefit of 80 years of California law since the decision in McGillicuddy interpreting these very issues. When does an employee have a permanent civil service versus a temporary assignment under California law, and for the purposes here of whether there's a property interest for a due process claim. And then, second, with respect to the protected speech, I take from the questions that it seems obvious to the City and perhaps to the Court that this was just an employee who was complaining about the way in which he was treated. And I think if you look at the allegations of the Fifth Amendment complaint there at the excerpts of record starting at 145, paragraph after paragraph after paragraph of the plaintiff seeking employment with the City, going through processes to get a permanent civil service appointment, seeing others get permanent civil service appointments who he believes are less qualified to him, he winds up with a temporary exempt employment, and he goes and complains. He was offered the opportunity to plead again and again. He says, I complain to my supervisors, I complain to the mayor. He never showed up at a commission hearing for his particular department. There's nothing public about this. It's clear that it's personal. The second point that was raised here this morning is, well, he also has these issues about falsified records. Yes, he does. That's in the complaint. But significantly, nowhere in the complaint does he ever say, I brought that concern to my supervisors or to the board of supervisors or anybody in the City. This is a rationale he's developed after the fact. It may be true, it may not be true, but it wasn't protected speech that he engaged in. It's an allegation in the complaint. Final point, and unless the Court has some questions, with respect to the taxpayer claim, the Court dismissed that. There's been a complaint filed in San Francisco Superior Court. That matter is proceeding. I can't see any reason why this Court should disturb that or muddy the waters on that claim by ---- Sotomayor, is that the claim the district court sent back? Correct. If there are no other questions ---- Kennedy, I believe not. Thank you, counsel. Thank you. So we'll hear a rebuttal from Mr. Turner's counsel. With respect to the vacant switch issue, what Mr. Turner alleges is that from the beginning the City hired him under, one, that he was told and understood that he was going to have a permanent position. But what makes this ---- Let me ask, just to ask you, just following up on what opposing counsel said, there's an allegation that he was handed a piece of paper which he signed upon his, when he commenced employment, acknowledging that he was a temporary employee. Is that correct? Yes. Okay. How do you get around that? How can it be a bait-and-switch when he acknowledges by signing a piece of paper that he is a temporary employee? I think the critical distinction is the fact that in the, for example, in the Kreutzer case, you have someone who was hired, did a mix of work as a temporary, and took on some additional tasks. Right. This isn't that case. Right. This is a case where the charter allows and authorizes temporary exempt hires only for instances in which you have a special project or professional services. Right. Mr. Turner was never assigned to special projects. Mr. Turner was never assigned to professional, was not, does not do professional services. I mean, I get your distinction with Kreutzer, but on the other hand, I don't see that, how that helps you, and it probably hurts you, because the exceptions don't apply, as you point out. And he signed this piece of paper acknowledging that he had been hired as a temporary employee. How do you get around that? I mean, that's, as counsel pointed out here, your lawsuit's been handled with kid gloves, if you will. The court's tried to be helpful, tried to allow for a lot of amendments to try to make it so you could plead a cause of action, and each time you run into these issues that are, as a matter of law, seem to bar your going forward. And I, for one, am troubled by the bait and switch, because I can't see where the court would be wrong when you're faced with this piece of paper your client clearly acknowledges signing. Well, in this case, I think the fact that there is no authorization for the hiring brings this case within McGillicuddy, because there, because it's, from the beginning, there's no authority to hire him as a temporary exempt. Did the laws on which your client's hiring in the first place even exist when McGillicuddy was signed? That was, I mean, issued after what, 1933? Something like that. McGillicuddy's a really old opinion. Sure, but the principle is the same, because I think the issue is that where a city can act only pursuant to its charter, the hiring of an individual, classifying someone as a temporary exempt, using that term, is not what governs. What governs when the city only has the authority to hire temporary exempt employees under certain circumstances, you cannot simply hire someone intending to not do that and never ask them to do any of that work and call them a, they are not a temporary employee by definition. And that's why it's, that's the distinction. It seems to me that the real cause of action is by the people that should sue the city for mispayment of wages. Your client agreed to take this. He took the pay. I don't see where he's got the claim. Well, I believe that I would argue that he does have the claim, because he's the individual who's most directly injured by doing the work. But he's now pursuing that claim in State court? No, well, that claim, the 526A claim is simply a claim for a taxpayer claim, and that was dismissed. And he's pursuing that now in State court? He was, it was dismissed in State court. Oh, it's also dismissed in State court? Yeah. However, the Supreme Court has just taken up the issue upon which the dismissal is based. So what's going to happen with that, we'll have to see what the Supreme Court does. Okay. Any other? Thank you both for your arguments. The case just argued is submitted, and the Court stands in recess for the day.
judges: Wallace, Smith, Friedland